UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DOMINIQUE WILEY,

    Plaintiff,

  v.           **DECISION AND ORDER**
               19-CV-6187S

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

_____

  1.  Plaintiff Dominique Wiley brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his applications for supplemental security income and disability insurance benefits under Title XVI of the Act.  (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

  2.  Plaintiff received Supplemental Security Income as a child due to a speech impairment and learning disability.  (R.[1] at 67, 82; No. 17-1, Def. Memo. at 1.)  He had his disability redetermined upon his eighteenth birthday, on May 27, 2014.  (R. at 11.)  Upon redetermination as an adult claimant, the administrative law judge ("ALJ") found Plaintiff had impairments of attention-deficit/hyperactivity disorder ("ADHD"); persistent depressive disorder; and cannabis abuse, active.  (R. at 13.)  Plaintiff was found not to be disabled as an adult, and he thereafter requested a hearing before an ALJ.

  3.  On October 25, 2016, ALJ Michael Devlin held a series of live hearings at which Plaintiff—self-represented—appeared.  (R. at 29-39.)  There, the ALJ advised plaintiff about his right to have counsel or a non-attorney representative at the hearing

_____

[1]Citations to the underlying administrative record are designated as "R."

and his girlfriend, Kateshia Davis, said that Plaintiff may want a representative (R. at 31-32).  Ms. Davis (while not serving as Plaintiff's representative) responded for plaintiff during much of that first hearing (R. at 31-39).  Plaintiff did state that he had not received any type of treatment for the prior year and a half (R. at 33-35; No. 17-1, Def. Memo. at 2).

4.     On November 28, 2017, Plaintiff, Ms. Davis, and Vocational Expert Peter Manzi appeared and testified at the renewed hearing.  (R.  at, 40-65.)  Plaintiff still did not have a representative; Ms. Davis testified to their efforts to obtain a representative (R. at 41-42).  After acknowledging that he granted one adjournment "no questions asked," the ALJ concluded that "there's been more than enough time to find a rep if it was possible," denying any further adjournment and proceeded with the hearing (R. at 43).

5.     At the time of the second hearing, Plaintiff was 21 years old, he graduated from high school with an IEP diploma (having attended under an Individual Educational Plan) and was currently working construction through a temporary agency (R. at 47-48, 14, 20, 21).  Plaintiff was homeless, had not had a medical physical since living with his mother (R. at 50).  Plaintiff had not seen a therapist or psychologist because he did not want people "judging" him, that at a therapy session in his youth his family discontinued treatment because he felt like they were being judged (R. at 50).  He testified that he spent his money inappropriately and "drowned my depression and my pain with drugs [marijuana] and liquor" (R. at 51), using marijuana everyday (R. at 51-52).

6.     The ALJ considered the case *de novo* and, on April 3, 2018, issued a written decision denying Plaintiff's applications for benefits.  After the Appeals Council denied

Plaintiff's request to review the ALJ's decision, he filed (now with counsel) the current action, challenging the Commissioner's final decision.[2]  (Docket No. 1.)

7.      Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 14, 17.)  Plaintiff filed a response on March 17, 2020 (Docket No. 20), at which time this Court took the motions under advisement without oral argument.  For the reasons that follow, Plaintiff's motion is **granted**, and Defendant's motion is **denied**.

8.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

9.      "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams *ex rel.* Williams v. Bowen,

---

[2]The ALJ's April 3, 2018, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review on January 23, 2019 (R. at 1).

859 F.2d 255, 258 (2d Cir. 1988).   If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."   Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).   In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."   Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

10.     Upon turning 18 years old, a juvenile claimant receiving Supplemental Security Income needs to have their disability redetermined under the rules for adult claimants, 42 U.S.C. § 1382c(a)(3)(H)(iii).  (No. 17-1, Def. Memo. at 5; see R. at 11, 12.)

11.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.   See 20 C.F.R. §§ 404.1520, 416.920.   The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled, 482 U.S. 137, 140-142 (1987).  This adult standard differs from the standards for determining disability in children (see R. at 12-13).

12.     The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age,

> education, and work experience; the [Commissioner]
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment, the
> fourth inquiry is whether, despite the claimant's severe
> impairment, he has the residual functional capacity to perform
> his past work.  Finally, if the claimant is unable to perform his
> past work, the [Commissioner] then determines whether there
> is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

13.     Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460 (1983).

14.     The ALJ analyzed Plaintiff's claim for benefits under the process set forth above.  At step one, the ALJ found since his May 27, 2014, eighteenth birthday, Plaintiff has not engaged in substantial gainful activity.  (R. at 13.)  At step two, the ALJ found that Plaintiff has the following severe impairments:  ADHD; persistent depressive disorder; and cannabis abuse, active.  Id.  The ALJ ruled out plaintiff's schizophrenia, speech impairment, and learning disability as severe impairments, finding that there was no evidence that these impairments had more than a minimal impact on Plaintiff's ability to

5

perform basic work activities.  Id. at 13-14.  The ALJ noted that conditions (apparently the schizophrenia) were controlled by conservative treatment and medication with no evidence of any significant or ongoing limitations.  Id. at 14.  There also was no record of ongoing treatment for speech, id., although Plaintiff testified that he was recently homeless and had not sought any treatment, id. at 50.  The ALJ cites to Plaintiff's graduation with an IEP diploma from high school and performing part-time work, concluding that "without more, the claimant's schizophrenia, speech impairment, and learning disability do not significantly limit the claimant's ability to perform basic work activities and constitute only non-severe impairments," id. at 14.

15.     At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id.

16.     Next, the ALJ found that, since May 27, 2014, Plaintiff retained the residual functional capacity ("RFC") to perform the full range of work at all exertional levels, but with the following nonexertional limitations:  he is able to understand, remember, and carry out simple instructions and tasks.  He can occasionally interact with coworkers and supervisors.  He should have little to no contact with the general public.  He is able to work in a low stress work environment (i.e., no supervisory duties, no independent decision-making required, no strict production quotas, minimal changes in work routine and processes, etc.).  He is able to consistently maintain concentration and focus for up to two hours at a time.  (R. at 16.)

17.     At step four, the ALJ found Plaintiff had no past relevant work.  (R. at 21.) At step five, the ALJ found that Plaintiff had a marginal education and was able to

communicate in English.  (R. at 21.)  The ALJ then found that Plaintiff's ability to perform work at all exertional levels was compromised by nonexertional limitations.  Given those limitations, the ALJ asked for the opinion of the vocational expert.  The expert opined that a hypothetical claimant at Plaintiff's age, education, and limited work experience could work in such occupations as furniture cleaner (medium exertion unskilled work) or hand packager (also medium unskilled work) (R. at 22, 55-56).  The ALJ thus concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R. at 22.)  Accordingly, the ALJ found that Plaintiff is not disabled.  (R. at 22-23.)

18.     Through counsel, Plaintiff now argues that the ALJ improperly evaluated the opinions of consultative examiner and other agency medical sources, adopting circular arguments to justify the RFC (No. 14-1, Pl. Memo. at 14-17).  The ALJ next erroneously gave little weight to Plaintiff's IEP, finding that it reached the ultimate determination of disability and that Plaintiff successfully graduated from high school (with an IEP diploma) (id. at 17; R. at 20).  Plaintiff argues that the ALJ failed to consider Plaintiff's learning disability at step two (and factor that impairment in later steps) (No. 14-1, Pl. Memo. at 17-24).  In his reply, Plaintiff notes that he was representing himself before the ALJ despite his mental and cognitive conditions (No. 20, Pl. Reply at 2).  The psychological consultant, Dr. Luna, recommended IQ testing of Plaintiff (R. at 409, 412) which the ALJ did not order (No. 20, Pl. Reply at 3, 4).  For the reasons that follow, Plaintiff's argument is **adopted**.

19.     Plaintiff did not have representative during either hearing.  He was granted an adjournment to find one but was not granted a second adjournment.  The ALJ

proceeded with the adjourned hearing, questioning Plaintiff for seven pages of the transcript (R. at 46-53) and then briefly questioning Plaintiff's girlfriend, Kateshia Davis (who did not appear as his representative) (R. at 53-54).  She noted that Plaintiff had a hard time paying attention to some of the ALJ's questions, finding that he cannot keep himself focused (R. at 53).  She also questioned his ability to comprehend (id. at 53, 54).  Plaintiff appeared depressed, like "a zombie," to Ms. Davis and had been getting worse during the five years she knew him (id. at 53-54).  She testified that Plaintiff lacks maturity and that he still had "like a younger teenager brain" (R. at 54).  During the colloquy with the vocational expert, Ms. Davis asked questions about earning power for the hypothetical occupations and then discussed Plaintiff's dropping out from community college from his confusion with the financial aid process (R. at 59-61).  Plaintiff interjected that he had no questions for the vocational expert but explained that he was strong, had ADHD, but did not like to be around crowds (R. at 59).

20.     In his reply, Plaintiff stressed the combination of self-representation and his mental and cognitive condition required the ALJ to further develop the record for Plaintiff (No. 20, Pl. Reply at 2).  The ALJ has a duty to "adequately protect a pro se claimant's rights 'by ensuring that all of the relevant facts [are] sufficiently developed and considered,'" Cruz v. Sullivan, 912 F.2d 8, 11-12 (2d Cir. 1990) (quoting Hankerson v. Harris, 636 F.2d 893, 895 (2d Cir. 1980)).  The ALJ has a further duty "to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," Gold v. Secretary of HEW, 463 F.2d 38, 43 (2d Cir. 1972).  This Court then "must determine whether the ALJ 'adequately protect[ed] the rights of [a] pro se litigant by ensuring that all of the relevant facts [are] sufficiently developed and considered,'" Echevarria v. Secretary,

HHS, 685 F.2d 751, 755 (2d Cir. 1982) (quoting Hankerson, supra, 636 F.2d at 895). Whether the ALJ met this duty to develop the pro se litigant's record is a threshold question before determination of whether the ALJ's conclusions are supported by substantial evidence, Hooper v. Colvin, 199 F. Supp. 3d 796. 806 (S.D.N.Y. 2016).  If the ALJ fails to develop the record, especially when a claimant is pro se, this Court must remand the case, Paredes v. Commissioner, No. 16CV810, 2017 U.S. Dist. LEXIS 76403, at *46 (S.D.N.Y. May 19, 2017) (Moses, Mag. J.); Hupp v. Commissioner, No. 17CV692, 2018 WL 3872153 (W.D.N.Y. Aug. 15, 2018) (Scott, Mag. J.).

21.    Defendant argues that the ALJ reasonably considered Plaintiff's learning disability and that substantial evidence supports the RFC (No. 17-1, Def. Memo. at 7-10, 11-14).  Acknowledging that the ALJ has a heightened duty to develop the record for a self-represented claimant, Defendant points out the ALJ here inquired about Plaintiff's recent medical treatment history and encouraged him to seek medical records; provided Plaintiff with an overview of the Social Security appeal process (id. at 11).  Defendant argues that Plaintiff understood the proceedings before the ALJ, shown by Plaintiff answering the ALJ's questions (id.).

22.    Thus, the initial issue here is whether the ALJ properly develop the record for this pro se Plaintiff.  First, the ALJ granted only one adjournment for Plaintiff to obtain representation.  The ALJ did provide a referral list and suggested where Plaintiff could go to seek representation (R. at 37-38).   Plaintiff's girlfriend, Kateshia Davis, described during the start of the second hearing their unsuccessful efforts to contact an attorney to take Plaintiff's case (R. at 42-43).  The ALJ then concluded that, after a year (partly due to delays in mailing notices to Plaintiff, R. at 43), Plaintiff had enough time to find

representation (id.).  The ALJ then proceeded with Plaintiff representing himself and not affording him (or Ms. Davis) an opportunity to object or to argue for a further adjournment.

23.     Second, Plaintiff alleged learning disabilities, as established in his school's IEP plan and the fact that he graduated with a high school diploma with an IEP notation (a diploma the ALJ found could not be used for admission to college and concluded that he had a minimal education, R. at 55, 21).  Plaintiff was awarded Supplemental Security Income benefits in part due to his learning disability (R. at 67, 82).  The ALJ, however, dismissed continuing disability after Plaintiff graduated and turned 18 (R. at 13-14).

24.     Third, the ALJ at the first hearing noted that there was not much of a medical file (R. at 32, 17).  Plaintiff, after turning 18 and while homeless, did not seek medical treatment (possibly due to his lost Medicaid benefit card, R. at 32-33) and declined psychological treatment he felt was judgmental (R. at 50).  Even though the ALJ advised Plaintiff to obtain medical records (R. at 33-35), Plaintiff did not.  Hence, he lacked a medical record to substantiate his disability claims; the total pages of this Administrative Record were 478 pages (including the ALJ's and Appeals Council decisions) with about half of the records were disability related or medical records (Docket No. 7).  During both hearings, Plaintiff and Ms. Davis asked the ALJ clarification questions about the records required and the sources for those records (R. at 34-35).

25.     As noted in his IEP, Plaintiff had IQ and other evaluative testing as late as 2012 while in school (R. at 344-49) but this occurred before he turned 18 and while he was receiving Supplemental Security Income for learning disability and other impairments.  Contrary to defendant's argument (No. 17, Def. Memo. at 9), the ALJ

needed to have Plaintiff tested again once he was an adult in order to have a complete record.

26.     The ALJ also needed to adjourn the proceeding to allow Plaintiff to find representation.

27.     The ALJ then failed to consider Plaintiff's learning disability in step two (and subsequent steps considering nonsevere impairments).  From the two hearings (and contrary to Defendant's contention, Docket No. 17-1, Def. Memo. at 11), the ALJ should have recognized that Plaintiff had difficulties in communication, focus, maintaining attention.

28.     Plaintiff raises other substantive arguments where the ALJ improperly evaluated the opinion evidence (No. 14-1, Pl. Memo. at 14-17).  This Court need not address these arguments; the ALJ failed in the preliminary obligation to ensure that the then self-represented Plaintiff has a fully developed record and adequate representation at the hearing.  It is not clear Plaintiff is disabled but he should be afforded the opportunity to develop the record to assist the Commissioner in making that determination.  This matter is **remanded**.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 14) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 17) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this opinion.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:          June 4, 2020
                Buffalo, New York


                                        s/William M. Skretny
                                       WILLIAM M. SKRETNY
                                      United States District Judge